**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JACQUELINE M. SAAVEDRA,

       Plaintiff,

       v.                                     No. CIV 08-240-WJ/LFG

J. WAYNE GRIEGO, et. al.

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed December 4, 2009 (**Doc. 95**). Following a hearing on the motion, for reasons stated on the record, the Court granted the motion on all of Plaintiff's claims.

### Background

Plaintiff is suing her former employer Wayne Griego ("Griego"), who is a former judge at Bernalillo County Metropolitan Court ("Metropolitan Court").[1]  Plaintiff was Griego's Trial Court Administrative Assistant ("TCAA") and participated, along with Griego and other members of Griego's staff, in the improper handling of Metropolitan Court traffic citations.  For reasons related to that conduct, in late January and early February of 2007, Plaintiff was suspended without pay, and was eventually terminated in mid-February of 2007.  Plaintiff's position is that she did nothing wrong because her involvement was at Griego's direction and insistence.  Griego was eventually suspended and removed from the bench for judicial misconduct related not only to ticket-fixing but also other matters such as his chronic absences

---

[1]  Plaintiff initially suited the Bernalillo County Metropolitan Court, which was dismissed as a Defendant in this case, leaving Defendant Griego as the only remaining Defendant.  See Doc. 47.

causing court delays, and directing his staff to initial plea agreements for him before they were adjudicated.

The Court partially granted Defendant's earlier motion to dismiss.[2]  What remains are Plaintiff's claims that (1) her Due Process rights based upon her liberty interest in continued employment were violated by Defendant's alleged defamatory statements made in the course of her termination and that (2) that Defendant Griego violated her First Amendment retaliation rights.  Defendant seeks summary judgment on these remaining claims.

Defendant filed the instant motion for summary judgment on December 4, 2009 (Doc. 95).  On March 2, 2010, the Court granted Defendant's motion to strike Plaintiff's response to Defendant's summary judgment motion, and gave Plaintiff another opportunity to respond – which Plaintiff failed to do. Doc. 122 ("March 2nd Order"). In that Order, the Court warned Plaintiff that

---

[2]  The Court ruled as follows:
(1) Plaintiff's claims against Griego in his official capacity were dismissed on the basis of 11th Amendment immunity;
(2) *Due Process, procedural & substantive:* Defendant was granted qualified immunity on Plaintiff's substantive and procedural due process claims because Plaintiff's at-will status foreclosed any claim that she had a legitimate expectation of future employment, and thus no protected property interest;
(3) *Liberty interest claim:* Defendant was denied qualified immunity on the liberty interest claim.  The Court found that Plaintiff "adequately pleaded facts alleging that Defendant made false statements in the course of her termination which tarnished her good name or reputation which have foreclosed employment opportunities and which were published;
(4) *First Amendment Retaliation claim:* Defendant was denied qualified immunity on the First Amendment retaliation claim because the Court could not determine "as a matter of law at this early stage in the case whether Plaintiff's assertions amount to speech under the First Amendment, and thus whether her claims state a viable First Amendment retaliation claim"; and
(5) *First Amendment right of association claim*: Defendant was entitled to qualified immunity on the First Amendment right to associate claim because Plaintiff failed to respond to Defendant's argument the law was not clearly established regarding Plaintiff's First Amendment right to associate with her employer that was violated by her termination.  Doc. 48.

2

in the event Plaintiff either files no response or files an untimely response, then the Court will grant summary judgment to Defendants if Defendants satisfy their initial burden of showing that there are no material issues of fact under Fed.R.Civ. P. 56.

Doc. 122 at 5, n.4.

On February 17, 2010, Defendant filed a Notice that briefing was complete on the summary judgment motion.   On March 31, 2010, the Court issued a notice of the hearing on the summary judgment motion, set for April 7, 2010.  During all this time, Plaintiff did not request an extension of time in which to file a response.  At the April 7th hearing, Plaintiff's counsel admitted receiving the Court's March 2nd Order, but stated that she failed to read it carefully enough to understand that the response had been stricken.  As a result, at the time of hearing, Plaintiff had not responded to Defendant's summary judgment motion.

Nevertheless, the Court allowed Plaintiff's counsel the opportunity to respond orally and on the merits to the summary judgment motion at the hearing. Defendant urged the Court to dismiss Plaintiff's claims based on Plaintiff's failure to respond to the summary judgment motion, based on Fed.R.Civ.P. 56(c), and also as a sanction under *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir.1988).  Defendant argued that Plaintiff's conduct interfered with the judicial process, and prejudiced Defendant in having to expend considerable costs in trying to defend this case where Plaintiff has exhibited other failures to comply with the Court's orders.[3]

Counsel for Plaintiff exhorted the Court to refrain from granting summary judgment as a sanction, contending that Plaintiff should not be penalized for counsel's oversight and that a lesser sanction would be appropriate, such as reimbursing Defendant for some of the costs

---

[3] Plaintiff failed to respond to Defendant's motion to strike a treating physician (Doc. 123) and failed to submit her portion of the pretrial order (see Doc. 120).

incurred.   At the hearing, after hearing counsel's arguments and considering the evidence in the record, the Court concluded that Plaintiff did not come forth with evidence which would create a dispute of fact, and that Defendant was entitled to summary judgment on all of Plaintiff's claims. Thus, the Court's granting of summary judgment in this case is not entered solely as a sanction for Plaintiff's counsel's failure to respond to the summary judgment motion, but also because counsel failed to present any evidence at all to dispute the evidence which supports Defendant's statements of fact – even when afforded yet another chance by the Court at the hearing.  Instead, counsel for Plaintiff referred to "evidence" which would be presented at a later time.  However, in order to withstand Defendant's summary judgment motion, the time to present such evidence has come and gone.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 56(e)) (non-movant is required to "designate specific facts showing that there is a genuine issue for trial).

 This is not to say that the granting of summary judgment in favor of Defendant solely as a basis for sanctions would not be justified.  Courts generally focus on three aggravating factors in determining whether to dismiss a claim with prejudice as a sanction: (1) the degree of actual prejudice to the defendant (2) the amount of interference with the judicial process; and (3) the culpability of the litigant. *Meade v. Grubbs,* 841 F.2d at 1521, n.8 (10th Cir. 1988); *see also Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992) (listing as non-exhaustive factors similar factors, including a consideration of the efficacy of lesser sanctions.  As mentioned, Plaintiff's counsel has had a history of failing to comply with the Court's Orders, and has been clearly warned regarding the consequences of failing to respond to Defendant's summary judgment when given a second opportunity to do it right.  The Court is sympathetic to the frustration of defense counsel in dealing with incomplete briefing and lack of diligence to the requirements of

prosecuting a case, as such conduct burdens an already overloaded Court docket.

As far as Plaintiff's counsel's objection that the Plaintiff is being punished for her attorney's oversight, the Court rejects this as a way to avoid dismissal of Plaintiff's case. Plaintiff voluntarily chose her lawyer, and is now bound by the actions of her legal representative. *See Gripe v. City of Enid, Okla*., 312 F.3d 1184, 1188-89 (10th Cir. 2002) (affirming dismissal under Rule 41(b) without direct evidence of plaintiffs' knowledge of attorney's derelictions because litigant bound by actions of attorney); *Link v. Wabash R.R. Co*., 370 U.S. 626, 633-634 & n. 10 (1962) (affirming dismissal under trial court's inherent authority for attorney's misconduct, including unexplained absence from pretrial conference, and observing that plaintiff "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent").

At the hearing, the Court addressed each of Plaintiff's claims and made findings on each one of the claims, concluding that based on the undisputed facts, Defendant was entitled to summary judgment on all of Plaintiff's claims.   The Court reiterates those findings here.

### Discussion

Plaintiff contends that Griego falsely led her to believe that her suspension was the decision of Chief Judge Judith Nakamura and Brian Gilmore (Metropolitan Court Administrator). He also led her to believe that he was making efforts to  minimize discipline which Judge Nakamura and Gilmore wanted to impose on her. However, Plaintiff later found out that her suspension was Griego's decision, and that while Griego was assuring Plaintiff that he was trying to do damage control on her behalf, he was actually trying to blame the ticket-fixing entirely on her.  In mid-February, Griego was interviewed by Larry Barker and allegedly told him that Plaintiff fixed the ticket on her own, without Griego's knowledge or involvement.

5

When confronted by Plaintiff, Griego denied telling Barker that Plaintiff had acted on her own.

On February 18, 2007, Griego falsely told Plaintiff that Judge Nakamura wanted her to resign and take the blame for the ticket-fixing, or else get fired. When Plaintiff insisted that she did nothing wrong, Griego stated that he was firing her, and hung up on her.  The next day, Plaintiff met with Mr. Gilmore, Judge Nakamura and Patricia Elliot (Metro Court HR director) on February 19th.  At this meeting, Plaintiff was told that nothing could be done about her termination because Griego had exclusive control over the hiring and firing of his TCAA.  At that time, Plaintiff also discovered that when Ms. Elliot wanted an opportunity to speak to Plaintiff, Griego had falsely told her that Plaintiff was out sick and would not talk to anyone. The local papers published articles and an editorial regarding her termination, placing the blame for the ticket fixing entirely on Plaintiff.  In the complaint, Plaintiff asserts that Griego suspended her in order to keep her away from Metro Court and thus cut off her ability to talk to anyone.

Plaintiff claims economic and non-economic damages.  She has suffered depression and anxiety following termination and two bouts of Bells Palsy, and has been unsuccessful in her attempts to return as an employee in the court system because she has been allegedly blackballed.   She contends that she was not afforded some kind of name-clearing process, to which she was due as a Metro Court employee. The Complaint has two counts: Count I asserts violations of the federal constitution (First Amendment right of association and free speech; and Fourteenth Amendment liberty interest); Count II alleges defamation.[4]

**Legal Standard**

Defendant moves for summary judgment based on qualified immunity, which then

---

[4]  Defamation is alleged as a separate count.  However, based on the language in the complaint, the claim appears to be part of Plaintiff's liberty interest claim.

6

requires that the Plaintiff bear a "heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir.2007). If a plaintiff meets this burden, the defendant must then satisfy the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002).

Here, however, Plaintiff failed to respond to the summary judgment motion. When this happens, a defendant is entitled to summary judgment after satisfying the initial burden of showing this there are no material issues of fact under Fed.R.Civ.P.56). *Murray v. City of Tahlequah, Okla, et al.*,312 F.3d 1196 (10th Cir. 2002). In such a case, the Court looks at the issues in order to determine whether the Court should "accept as true all material facts asserted and properly supported in the summary judgment motion." *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). Thus, if Defendant provides evidentiary support for his undisputed statement of facts, Defendant is entitled to summary judgment.

## I.    Undisputed Facts

The following facts remain undisputed, even after Plaintiff was allowed to respond verbally to Defendant's summary judgment motion at the April 7, 2010 hearing. Defendant provides evidentiary support for each of these facts.

The position of TCAA, which Plaintiff held until her termination, is an at-will position. During her tenure of employment as Griego's TCAA, Plaintiff knew that it was improper when Griego asked her to stamp matters as being adjudicated when in fact they had not been fully adjudicated. During the entire time that Plaintiff was employed as Griego's TCAA, she never told Griego that his actions regarding the handling of citations were wrong, or that it was wrong

7

to perform improper and illegal actions regarding the adjudication of tickets. During the time that she was on suspension or on administrative leave, Plaintiff never told Griego that she was going to go to the press, or that she was going to talk to Metropolitan Court Chief Judge Nakamura.  Ex. C (Saavedra Dep.) at 95:4-25; 96:1.  Although Plaintiff knew that Griego was asking her to perform actions that were improper, she never told Chief Judge Judith Nakamura, or Metropolitan Court Administrator Brian Gilmore until after she was terminated.

Plaintiff was advised by Griego that she was terminated during a telephone call between the two of them on Sunday afternoon, February 18, 2007.  Ex. C (Saavedra Dep. at 77:18-21). After arranging a meeting with Chief Judge Nakamura for February 19, 2007 (the day after Plaintiff was terminated), Plaintiff prepared a written statement for the meeting.  Ex. C at 74:9, 19-22.  The meeting on February 19th was attended by Judge Nakamura, Mr. Gilmore and Personnel Director Patricia Elliott on February 19, 2007.  Ex. C at 70:17-21. During that meeting, Plaintiff told Judge Nakamura that she wanted to tell her side of the story.  Ex. C at 71:71-25.

During the February 19, 2007 meeting, Plaintiff told her side of the story regarding actions pertaining to traffic tickets, and she read her written statement.  Ex. C at 73:15-25; 74:1-3; 82:12-16.  It was apparent by Plaintiff's representations to Judge Nakamura during the February 19, 2007 meeting that Plaintiff had known about the improper handling of traffic citations prior to her termination by Griego. However, this was the first time Plaintiff had informed Judge Nakamura about these activities that were later the subject of an inquiry by the Judicial Standards Commission. Ex. D, Judge Nakamura Aff.

No prospective employer has ever told Plaintiff that the reason why she was not hired by them was because they believed she was responsible for any improprieties regarding tickets.  Ex.

C at 69:4-11; 87:12-22; 92:14-25.  Nor did Plaintiff have any personal knowledge of anyone at Metropolitan Court blackballing her.  Ex. C at 62:24-25; 63:1-4, 22-25.  Plaintiff did not apply for work at Metropolitan Court after she was terminated by Griego.  Ex. C at 63:5-7. Griego's last official day as judge was on or about March 18, 2008.  In accordance with established Court policy, had Plaintiff not been previously terminated, her employment as a TCAA with Metropolitan Court would have terminated contemporaneously with that of her judge, as occurred with Griego's final TCAA.  Ex. D, Judge Nakamura Aff.  Further, Plaintiff knew that once Griego was removed from the bench, there was no position for her to return to.  Ex. C at 64:1-7.

Plaintiff's failure to inform Judge Nakamura or the Court Administrator of Griego's improper conduct and her own participation in the improper conduct effectively disqualified her from employment with Metropolitan Court. Ex. D, Judge Nakamura Aff.  The Judicial Standards Commission issued Findings of Fact and Conclusions of Law on February 20, 2008, after hearing testimony from various witnesses, including Griego, Ms. Mondragon and Ms Saavedra. The Judicial Standards Commission made a finding which states in part, following hearing the testimony and observing the demeanor of Griego, Ms. Mondragon and Plaintiff, that the three of them

> were all aware of and participated in the improper handling of the traffic citations at issue in this case.  All three took advantage of their positions to improperly dispose of the traffic citations received by friends and family members.

Ex. E, Finding of Fact 8; Ex. D, Nakamura Aff.

## II.    Fourteenth Amendment Due Process – Liberty Interest

Plaintiff alleges that Griego violated her liberty interest by defamatory statements made about her in the course of her termination.  Defamation alone is not sufficient to establish a claim

9

for deprivation of a liberty interest. *Stidham v. Peace Officers Standing and Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (quoting *Renaud v. Wyo. Dep't of Family Servs.*, 203 F.3d 723, 726-27 (10th Cir.2000)).  However, the Tenth Circuit has established a four-part test to address claims where a plaintiff alleges infringement of a liberty interest in one's good name and reputation as it affects one's property interest in continued employment.  To be actionable, (1) the statements must impugn the good name, reputation, honor, or integrity of the employee; (2) the statements must be false; (3) the statements must occur in the course of terminating the employee or must foreclose other employment opportunities, and (4) the statements must be published.  *Id.* (citing *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir.1994)).  Defendant submits sufficient evidentiary support that Plaintiff's claim does not meet this test.  Because Defendant concedes that the allegedly false statements were published, the Court's analysis is limited to the three remaining *Workman* prongs.

A.     First *Workman* Prong (good name)

With regard to the first prong, Plaintiff has to establish that one has a good name, reputation, honor, or integrity. Damage to one's reputation alone is not enough to implicate the protections of due process. *See Gwinn v. Awmiller,* 354 F.3d 1211, 1216 (10th Cir. 2004.) In addition to demonstrating that the statements are damaging to one's reputation, in order to meet the "stigma-plus" standard applied by the Tenth Circuit, a plaintiff must demonstrate that the statements caused "a governmentally imposed burden that significantly altered [her] status as a matter of law." *Isengard v. New Mexico Public Education Department,* 2009 WL 3672761 *8 (*citing *Gwinn*, supra, and *Ewers v. Bd of County Comm'rs of Curry County*, 802 F.2d 1242, 1247 (10th Cir. 1986)).

Defendant presents evidence that, by her own statements as well as the findings of the

10

Judicial Standards Commission, Plaintiff participated in the conduct, and never reported it or complained about it until after she was terminated. She knew it was improper to stamp matters as being adjudicated when in fact they were not, and it was improper to participate in the ticket-ixing matter. The fact that she *freely* engaged in this conduct reflects poorly on her purported good name, reputation, honor or integrity. Plaintiff is therefore hard-pressed to establish that she conducted herself with honor or integrity while employed as a TCAA.

B.    Second *Workman* Prong (Falsity of Statements)

Plaintiff cannot establish the falsity of the purported statements made about her indicating that she participated in the conduct while employed as Griego's TCAA. In her deposition statements as well as her statements to the media, Plaintiff admitted to participating in the conduct and to knowing that the participation was wrong. The findings of the Judicial Standards Commission reflect Plaintiff's own statements.

C.    Third *Workman* Prong (Course of Terminating and Foreclosing Employment)

Defendant contends both that the alleged false statements were not made in the course of her termination, and that the statements have not foreclosed future employment opportunities. The Court had previously determined that the statements were made "in the course of her termination" in its rulings on Defendant's motion to dismiss (Doc. 48 at 8). The question here is whether the alleged false statements foreclosed other employment opportunities.

The Tenth Circuit has suggested that *Workman's* third element should have been phrased conjunctively, meaning that the statement must occur in the course of terminating the employee *and* must foreclose other employment opportunities – contrary to Workman's disjunctive phrasing. *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1255 (10th Cir. 2007). The *Darr* court did not resolve the issue because plaintiff's legal theory in that case failed for other

11

reasons.  Similarly, it doesn't matter here whether Plaintiff meets the third *Workman* prong (if it should continue to be read in the disjunctive), because all four prongs must be met to establish a liberty interest deprivation, and Plaintiff has failed to meet all four prongs.

Although I previously denied Defendant's motion for dismissal of this claim, I now find that Defendant has submitted evidence that the allegedly false statements did not foreclose employment opportunities.  Under *Workman*, the statements at issue must foreclose employment opportunities.  Here, however, it was Plaintiff's own participation in improper conduct, including a failure to report the conduct until after she was terminated, which has effectively disqualified her from employment at Metropolitan Court.  Moreover, even if she had not been terminated for that reason, Plaintiff's position would be ended after Griego was removed from the bench – a fact which she herself acknowledges (Ex. C at 64:1-7).[5]

Moreover, Defendant presents evidence that, contrary to Plaintiff's contention that the allegedly false statements foreclosed employment to her, Plaintiff actually sought and obtained employment as a legal secretary.  Ex. C at 65:15-19. Plaintiff chose to work for this attorney for only two weeks. Plaintiff stated that she left that job because she "couldn't do it" and that she was "scared and . . . honestly can't be around people, and I can't be by myself as well."  Ex. C at

---

[5]  The property interest in continued employment which is implicated is that identified in *Paul v. Davis*, 424 U.S. 693, 701 (1976). *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994).  As such, it is a property interest in being able to work, rather than the property interest in a particular job as discussed in the preceding section of this opinion. *See Melton v. City of Okla. City*, 928 F.2d 920, 927 (10th Cir.1991) (stating a public employee has a claim for relief when he is terminated "based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities").  Thus, it is not enough for Plaintiff to show that she is foreclosed from only Metropolitan Court jobs (even though in this case she is foreclosed from those jobs either from her own conduct or from the removal of Griego from the bench).  She must show she is foreclosed from being able to work.

65:19-25.  Thus, subsequent to her termination, Plaintiff *was* in fact employed within the legal community.  In April or May of 2007, Plaintiff stopped seeking employment. Ex. C at 90:1-20; Ex. H (N.M.Dept. of Labor listing of job applications). As a result, Plaintiff cannot establish that her reputation was tarnished so much that she could find no employment as the result of any action by Griego.

Also, Plaintiff's allegation that Griego has effectively "black-balled" her from obtaining future employment is conclusory because it is not supported by Plaintiff's own testimony. Plaintiff has no personal knowledge of anyone at Metropolitan Court black-balling her, and has no personal knowledge of Griego speaking about her in such a manner to prohibit her from obtaining employment.  Ex. C at 62:42-25; 63:1-4, 22-25; 66:1, 25; 67:1-3.   Plaintiff cannot claim that employment opportunities are foreclosed to her because of her *participation* in the ticket-fixing, since she admits to the participation.  Rather, she has to show that Griego's statements blaming the whole matter on her were responsible for foreclosure of employment opportunities.  No  prospective employer has ever told Plaintiff that the reason why she was not hired was because that individual believed she was solely responsible for any improprieties regarding tickets. *See Exhibit C, Deposition of Jacqueline Saavedra, p. 69, ll. 4-11; p. 87, ll. 12-22; p. 92. ll. 14-25.*  As a result, Plaintiff cannot show that any of Griego's statements "caused a governmentally imposed burden that significantly altered [her] status as a matter of law." *Isengard,* supra, citing *Gwinn,* supra.  Consequently, Plaintiff cannot establish that Griego was the cause of any of her damages.

Tenth Circuit law is clearly established that "[d]amage to prospective employment opportunities is too intangible to constitute a deprivation of a liberty interest." *Jensen v. Redevelopment Agency of Sandy City,* 998 F.2d 1550, 1559 (10th Cir. 1993) (*citing Phelps v.*

13

*Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989)).  Thus, even if Plaintiff

successfully met all of the *Workman* requirements, Defendant would be entitled to qualified

immunity because Plaintiff must show that future job opportunities were *foreclosed*, and not

simply that her prospective employment opportunities were damaged in some way.  Based on the

evidence presented by Defendant (which Plaintiff has failed to rebut by presenting material facts

to dispute that evidence), Plaintiff has not made that showing and thus, Defendant would be

entitled to qualified immunity with regard to the liberty claim.

## II.    Fourteenth Amendment – Deprivation of Due Process

As part of her Due Process claim, Plaintiff alleges that she was not afforded a name-

clearing process, to which she was entitled as a metro court employee.  However, because

Plaintiff has not shown that she suffered a liberty interest violation, she is not entitled to a

"name-clearing hearing." *See Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) (in order to

be entitled to a "name-clearing hearing," a plaintiff must first establish that she has set forth a

liberty interest claim.").

Moreover, even if the Court were to determine that Griego alone was responsible for the

purportedly damaging statements, and that the statements as a matter of law harmed Ms.

Saavedra enough to establish a liberty deprivation, her claim would fail because Plaintiff did in

fact receive a hearing to "clear her name."  In the meeting Plaintiff had with Mr. Gilmore, Ms.

Elliot and Chief Judge Nakamura  the day after she was terminated, Plaintiff got to tell her side

of the story pertaining to traffic tickets through her own statements and from a prepared written

statement.  Ex. C at 73-74.  Plaintiff admits that she said everything she wanted to say at that

meeting, and she did not get the impression that anyone in attendance at the meeting was

preventing her from saying anything.  Ex. C at 79:2-7.   Thus, Plaintiff was afforded an

opportunity to "clear her name" the day after termination, even if she had met all the *Workman* requirements and shown that Defendant had infringed upon her liberty interest.  In addition, Plaintiff got to tell her side of the story by testifying before the Judicial Standards Commission, by confronting Griego, and by participating in media interviews.  Importantly, the evidence in the record is that she received this name-clearing hearing by the three people who could determine if Plaintiff would be entitled to re-employment at Metro Court: Judge Nakamura, Mr. Gilmore and Ms. Elliot.  Ex. D (Aff. of Metro Court Chief Judge Judith Nakamura, ¶ 7).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's liberty interest claim.

## III.    First Amendment

Plaintiff's First Amendment claim is alleged loosely in the complaint, premised on Plaintiff's belief that she was kept "isolated" and "muzzled" during her suspension.  Defendant's position is that Plaintiff did not engage in protected speech, and that she has no right to be rewarded for illegal activities and illegal and improper conduct.

Public employees possess a First Amendment right to free speech. *See e.g., Connick v. Myers*, 461 U.S. 138, 142, (1983). It is clearly established law that the First Amendment protects a public employee's right to speak out on matters of public concern. *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968). However, there must be speech in the first instance, and that speech has to be "protected."  Plaintiff cannot show she engaged in speech (much less protected speech), nor can she show that she was terminated as a result of engaging in protected speech.

The Court denied Defendant's motion to dismiss on this claim, concluding that more information was needed about the "timing and content of Plaintiff's alleged protestations."  Doc.

15

48 at 10.  Now, in the summary judgment motion, Defendant has fleshed out the facts to where it

is clear that Plaintiff did not engage in speech which entitled her to First Amendment protection.

Plaintiff's "isolation" claim fails because she has not shown that Griego ordered her not

to talk to anyone.  In the complaint, Plaintiff alleges that Griego told her to "take one for the f----

ing team."  Am. Compl., ¶22.  However, later in her deposition, Plaintiff could not recall when

he had actually made that statement.  Ex. C at 16:9-25; 17:1-3.  Plaintiff also alleged that Griego

told her to "resign and take the fall, or be fired," implying that Plaintiff was told to keep quiet

about the extent of her participation in the ticket-fixing, or else be fired.  However, Plaintiff

acknowledged in her deposition that her job would have ended when Griego was removed from

the bench on March 18, 2008.  Thus, the purported statements made by Griego to keep her quiet

can be considered conclusory because they are not supported by specific facts.  *See Cole v.*

*Ruidoso Mun. Schools*, 43 F.3d 1373, 1382 (10th Cir. 1994) (conclusory statements are

insufficient to defeat a motion for summary judgment).

Plaintiff's First Amendment retaliation claim fails for another reason, and that is: she did

not engage in any speech that can be considered "protected."  Plaintiff did not speak out about

the ticket-fixing or her participation in the matter until *after* she was terminated, in an effort to

keep her job. Ex. C at 25:25; 29:1-10.[6]

Therefore, the Court finds that Plaintiff's termination and her disqualification for future

employment at Metropolitan court was not a result of retaliation, but rather a result of her own

---

[6] Although not necessary to the Court's analysis, the Court questions whether the speech in which Plaintiff engaged would be considered protected speech, since it was made with the self-interested purpose of clearing her own name, rather than relating to matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 146 (1983); *Arndt v. Koby*, 309 F.3d 1247 (10th Cir. 2002) (police officer's proposed speech was not on matter of public concern where officer's own testimony indicated she sought to clear her personal reputation).

statements and admissions to Judge Nakamura, and her inappropriate actions while she was Griego's TCAA.  Ex. D, ¶ 12.

**Conclusion**

The Court finds and concludes that Plaintiff's due process claim based on a violation of her liberty interest fails because Plaintiff has not satisfied all the elements of *Workman* to show that her liberty interest was infringed.

Plaintiff's due process claim based on an alleged failure to provide a name-clearing hearing fails because Plaintiff is not entitled to a name-clearing hearing where she has not shown an infringement of her liberty interest.  Even if Plaintiff did show her liberty interest was infringed, Plaintiff *did* receive an opportunity to clear her name at the meeting with Judge Nakamura, Mr. Gilmore and Ms. Elliot held on February 19, 2007, the day after she was terminated.

Plaintiff cannot withstand summary judgment on her First Amendment claim based on being "isolated" in a freedom of speech context, because Plaintiff has not shown that she was ordered not to talk.  Plaintiff's First Amendment claim based on retaliation also fails because Plaintiff did not engage in speech until after her termination, and thus her termination could not have been the result of retaliation for her speech.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Summary Judgment motion (**Doc. 95**) shall be GRANTED for reasons described in this Memorandum Opinion and Order.

A Judgment will be entered contemporaneously with this Memorandum Opinion and Order.

UNITED STATES DISTRICT JUDGE